IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**NUTRIEN AG SOLUTIONS, INC.**                                                           **PLAINTIFF**

**V.**                     **NO. 4:25-CV-43-DMB-JMV**

**STRIDER MCCRORY**                                                    **DEFENDANT**

**ORDER**

Nutrien Ag Solutions, Inc., seeks a default judgment against Strider McCrory for breach of contract. Because a default judgment is procedurally warranted and the pleadings establish a sufficient basis for a default judgment, a default judgment will be granted.

**I**
**Procedural History**

On May 2, 2025, Nutrien Ag Solutions, Inc., filed an amended complaint[1] against Strider McCrory in the United States District Court for the Northern District of Mississippi, asserting a breach of contract claim based on past due invoices under an agricultural business line of credit. Doc. #3. On its breach of contract claim, Nutrien sought "no less than $116,031.68 together with pre- and post-judgment interest, plus attorneys' fees, costs, and all other expenses incurred in connection with all legal measures and litigation undertaken to collect the amounts owed." *Id.* at 4. Docs. #7, #8. On July 16, the Clerk of the Court entered a default against McCrory on Nutrien's motion. Docs. #9, #10.

On August 25, Nutrien filed a motion for a default judgment against McCrory. Doc. #11. McCrory has not appeared in this case and thus did not respond to the motion.

---

[1] Nutrien filed its original complaint on April 10, 2025. Doc. #1. Nutrien amended its complaint as of right because it had not then served the original complaint on McCrory. FED. R. CIV. P. 15 (a)(1). Both the original complaint and the amended complaint asserted diversity jurisdiction under 28 U.S.C. § 1332. Doc. #1 at 1; Doc. #3 at 1.

# II
# Analysis

Pursuant to Federal Rule of Civil Procedure 55, a default may be entered "against a party when it 'has failed to plead or otherwise defend' itself." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (quoting FED. R. CIV. P. 55(a)). However, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default," *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996), because "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations," *Sun Bank*, 874 F.2d at 276. "Generally, the entry of default judgment is committed to the discretion to the district judge." *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

The three steps to obtaining a default judgment are (1) default by the defendant, (2) clerk's entry of default, and (3) entry of default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Because the first two steps have been satisfied here, the only issue left to consider is whether default judgment should be entered. In making this determination, the Court conducts a three-question analysis: (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015).

### A. Procedural Justification

In determining whether a default judgment is procedurally warranted, a court should consider (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default

2

judgment;" and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion."[2] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where, as here, a party fails to respond to or answer the complaint, there are no material issues of fact at issue. *See Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 753 (N.D. Tex. 2020) ("[B]ecause Eltman has not filed any responsive pleading, there are no material facts in dispute.").

Second, McCrory's failure to respond causes prejudice to Nutrien because it "threatens to bring the adversary process to a halt, effectively prejudicing [Nutrien's] interests." *Id*. (quoting *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011)).

Third, as mentioned above, the grounds for default (default and entry of default) are clearly established.

Fourth, there is no evidence before the Court that the "default was caused by a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893.

Fifth, McCrory did not file an answer or otherwise appear to defend himself in this case, and has not attempted to set aside the default since it was entered. Although default judgment is a harsh remedy, "failure to file a responsive pleading or otherwise defend the instant lawsuit mitigates the harshness of a default judgment." *KLLM Transp. Servs., LLC v. Green Line Trucking, Inc.*, No. 1:24-cv-149, 2025 WL 2601556, at *2 (N.D. Miss. Sep. 8, 2025) (quoting *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 622 F. Supp. 3d 232, 237 (M.D. La. 2022)).

Finally, if McCrory later sought to challenge the default, the Court is unaware of any facts that would make it "obligated to set aside the default." *Lindsey*, 161 F.3d at 893.

---

[2] Nutrien analyzes only factors 3 through 6, Doc. #12 at 5, but the Court is obligated to consider them all.

Consequently, all factors weigh in favor of a default judgment being procedurally warranted in this case.

### B. Sufficient Basis in the Pleadings

"In light of the entry of default, [McCrory is] deemed to have admitted the allegations set forth in [the amended] Complaint." *J & J Sports*, 126 F. Supp. 3d at 815. However, when reviewing a request for a default judgment, "the defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Addressing the "sufficient basis in the pleadings" requirement, the Fifth Circuit has observed:

> Despite announcing that a default judgment must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings, the *Nishimatsu* court did not elaborate on these requirements. … and we have found no guidance in our own cases. Nevertheless, we draw meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint.
>
> Rule 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests. The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Detailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

*Id.* at 498 (cleaned up).

### 1. Factual allegations

On October 1, 2021, Nutrien pre-approved McCrory for an agricultural business line of credit up to $100,000 in the aggregate, which McCrory accepted on March 20, 2023, and entered into a credit agreement ("Agreement") with Nutrien. Doc. #3 at 2; Doc. #3-1 at PageID 36–38. Under the Agreement, McCrory agreed to pay Nutrien the purchase price for all products

4

purchased by him together with finance charges, fees, and expenses due on or before the maturity date, and that default occurs where he fails to make any payment to Nutrien when due, where he fails to comply with the terms of the Agreement or any other agreement between him and Nutrien, and upon other specified circumstances. Doc. #3-1 at PageID 39, 40.

As of November 2024, McCrory's account contained numerous past due invoices, constituting default. Doc. #3 at 3; Doc. #3-2 at PageID 41. Consequently, Nutrien sent McCrory a demand letter on December 11, 2024, declaring all McCrory's credit obligations immediately due and demanding full payment of not less than $110,457.14 within thirty (30) days.[3] Doc. #3-3 at PageID 47. McCrory received the demand letter. *Id*. at PageID 58. McCrory has not paid the account balance. Doc. #3 at 3.

## 2. Claim

The amended complaint asserts a breach of contract claim. *Id.* at 2–3. To establish a breach of contract claim under Mississippi law,[4] a plaintiff must demonstrate "(1) 'the existence of a valid and binding contract,' and (2) … 'that the defendant has broken, or breached it.'" *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012)). A binding contract exists when six elements are present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *White v. Jernigan Copeland Att'ys, PLLC*, 346 So. 3d 887, 896

---

[3] The demand letter clarified, "In the event [McCrory] fail[s] to tender this amount within that time, Nutrien reserves the right to file suit against [him] for all amounts owed." Doc. #3-3 at PageID 47.

[4] The Agreement contains a choice of law provision that states it "will be construed and interpreted in accordance with federal law and, to the extent not preempted by federal law, the laws of the state in which the sale of the Products was made, without regard to internal principles of conflict of laws." Doc. #3-1 at PageID 40. Generally, Mississippi upholds choice of law provisions "where the contract is valid and binding." *Lagrone* v. *OMNOVA Sols.*, No. 1:16-159, 2018 WL 1570810, at *2 (N.D. Miss. Mar. 31, 2018).

5

(Miss. 2022) (emphasis omitted) (quoting *Hattiesburg Health & Rehab Ctr., LLC v. Brown*, 176 So. 3d 17, 21 (Miss. 2015)).

The amended complaint alleged an agreement between Nutrien and McCrory (two or more contracting parties) specifying that Nutrien provided McCrory a line of credit in exchange for McCrory paying back the purchase price for all products plus fees (consideration). Doc. #3 at 2. Attached to the amended complaint is the contract between Nutrien and McCrory—which provides definite terms for the Agreement, finance charges, payments, and conditions—and McCrory accepted and agreed to its terms. Doc. #3-1. There is no indication that either Nutrien or McCrory lacked capacity to contract. *See Manhattan Nursing & Rehab. Ctr., LLC v. Hollinshed*, 341 So. 3d 991, 993 (Miss. Ct. App. 2022) ("The law presumes a person sane and mentally capable to enter a contract. The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental capacity to establish it by a preponderance of proof.") (quoting *Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (Miss. 2001)). And the Court is unaware of any legal prohibition precluding contract formation. Accordingly, a valid contract and its breach by McCrory are established.

### C. Relief

"A default judgment establishes the defendant's liability but not the quantity of damages." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019). Rather, "the burden of establishing damages rest[s] squarely and solely on [the plaintiff]." *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011). "[A] plaintiff seeking monetary damages for breach of contract must put into evidence, with 'as much accuracy as' possible, proof of the damages being sought." *Bus. Commc'n*, 90 So. 3d at 1225 (quoting *Thomas v. Glob. Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1116 (Miss. 1986)).

6

Nutrien seeks "a Default Judgment against McCrory in the amount of $118,843.95, plus $27,243.00 in attorneys' fees and $2,422.82 in expenses incurred through August 14, 2025." Doc. #11 at 1.  In support of these amounts, Nutrien relies on the affidavit of Jeff Cochran, "a Special Assets Manager for Nutrien," and the affidavit of Abbey Adcock Reeves, "an associate with the law firm of Jones Walker LLP [and] an attorney of record for Nutrien."  Doc. #11-2 at 1; Doc. #11-3 at 1.

### 1.  Outstanding balance

Cochran attests that he is "the Special Assets Manager currently assigned to manage … McCrory's account;" and that McCrory owes Nutrien the total amount of $118,843.95, including "interest accrued."  Doc. #11-2 at 1, 2.

Based on the Court's review of the Agreement, the Agreement does not expressly mention "interest."  However, the Agreement contains a "Finance Charges" section that states, "Finance charges will accrue on Buyer's account balance at the Applicable Rate until the Credit Obligations are paid in full. In no event shall the finance charges exceed the maximum rate allowed by law."  Doc. #3-1 at PageID 39.  And the November 2024 account statement for McCrory attached to the amended complaint provides in the terms and conditions that "[a]ny invoice not paid in full by the 25th day of the month will be assessed a finance charge [that] will be computed as of Nutrien's accounting month end closing and each succeeding month until the balance is paid in full," specifying that the monthly rate for such finance charge will be 1.75% in Mississippi.  Doc. #3-2 at PageID 45.  Because Cochran's "interest" calculations appear consistent with the imposition of finance charges in accordance with the Agreement and the account statement's terms and conditions,[5] and McCrory's outstanding balance including such amounts are evidenced by the

---

[5] Cochran specifies that the amount due as of December 11, 2024, was $110,457.14; the "interest accrued" from December 11, 2024, to March 31, 2025, was $5,574.54; the amount due as of March 31, 2025, was $116,031.68; the

7

general ledger statement attached to the motion,[6] Nutrien will be awarded $118,843.95 as the total outstanding balance.

### 2. Attorneys' fees and expenses

Where attorneys' fees are authorized by contract under applicable law, the Court may award such fees. *See Norris v. Causey*, 869 F.3d 360, 373 (5th Cir. 2017). Mississippi law[7] authorizes attorneys' fees in breach of contract cases when there is a provision for such in the contract. *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 164 (Miss. 2011). An award of attorney's fees must be reasonable. *Weaver v. Ross*, 391 So. 3d 1240, 1248 (Miss. Ct. App. 2024). To calculate a reasonable fee award, courts use the lodestar method which entails using "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Tupelo Redev. Agency v. Gray Corp.*, 972 So. 2d 495, 521–22 (Miss. 2007) (emphasis omitted) (quoting *BellSouth Pers. Commc'ns, LLC v. Bd. of Supervisors of Hinds Cnty.*, 912 So. 2d 436, 446–47 (Miss. 2005)). Once the lodestar amount is determined, a court may consider other factors, *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989), such as the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

Here the Agreement allows for reasonable attorneys' fees and expenses.[8] Thus, the Court must determine only whether the requested fees and expenses are reasonable.

---

"interest accrued" from March 31, 2025, to April 30, 2025, was $1,383.08; the amount due as of April 30, 2025, was $117,414.76; the "interest accrued" from April 30, 2025, to May 31, 2025, was $1,429.19; the amount due as of May 31, 2025, was $118,843.95; and the "interest accrued" after May 31, 2025 was $0.00. Doc. #11-2 at 2.

[6] Doc. #11-1.

[7] State law governs the award of attorneys' fees in diversity cases. *Norris*, 869 F.3d at 373.

[8] "[McCrory] is liable for and shall pay all reasonable costs and expenses of every kind incurred by [Nutrien] in connection with the collection of the Credit Obligations, including, without limitation, reasonable attorneys' fees and court costs." Doc. #3-1 at PageID 39.

8

              a. *Lodestar calculation*

Nutrien seeks "$27,243.00 in attorneys' fees." Doc. #11 at 1. Reeves' affidavit includes a chart summarizing the total fees for the services Jones Walker LLP provided Nutrien, including for each person who worked on the case the name and title, hourly rate, and number of hours expended.[9] Doc. #11-3 at 2–3. Reeves further states that "[t]he fees for this matter are charged on an hourly basis and are discounted rates less than standard rates charged by Jones Walker" and "[t]he fees in this matter are reasonable and fairly standard for collection matters because they are less than one-third the amount McCrory owes." *Id*. at 5.

Based on the Court's review of the record, the specified hourly rates and the number of hours spent litigating this case are reasonable, especially given the November 2024 default of the $110,457.14 balance owed to Nutrien. *See Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 97 (5th Cir. 1972) ("The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge."); *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) ("There exists a strong presumption of the reasonableness of the lodestar amount.").

              b. *Johnson factors*

The *Johnson* factors include (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability

---

[9] According to Reeves, Jones Walker's services in this case "included a demand for McCrory's immediate payment of the deficiency amount owed to Nutrien and this civil action," which required "efforts both pre-suit and after this case was filed." Doc. #11 at 2. "These efforts would have been unnecessary but for McCrory's failure to pay amounts due and owing to Nutrien." *Id.*

9

of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[10] *Johnson*, 488 F.2d at 717–19.

Because factors one, two, three, five, seven, eight, and nine are reflected in the lodestar amount, the Court will not consider them. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770–72 & n.12 (5th Cir. 1996) ("[T]he district court must be careful … not to double count a *Johnson* factor already considered in calculating the lodestar.") (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)). And "[t]he Supreme Court has barred any use of the sixth factor." *Id.* at 772 (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), and *Shipes*, 987 F.2d at 323). So, the Court limits its examination to the fourth, tenth, eleventh, and twelfth factors.

As to the fourth factor—the preclusion of other employment by the attorney—Reeves' affidavit states that "Jones Walker attorneys and paralegal were not able to devote time to other matters while pursuing this matter." Doc. #11-3 at 3. Regarding the tenth factor—the undesirability of the case—Reeves states that "[t]he legal issues in this matter were straightforward[; h]owever, the factual circumstances and uncertainty of recovery presented challenges in managing time and resources dedicated to pursuing this case [and] recovery of the deficiency amount or any part thereof is uncertain." *Id.* at 3–4. For the eleventh factor—the nature and length of the professional relationship with the client—Reeves represents that "Mr. Richard

---

[10] These factors are virtually identical to the factors outlined in the Mississippi Rules of Professional Conduct regarding what should be considered in evaluating the reasonableness of an attorney's fee. *See* MISS. R. PROF. CONDUCT r. 1.5(a) ("The factors to be considered in determining the reasonableness of a fee include … (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.") (paragraph formatting omitted).

Gaal is a partner [at] Jones Walker … and has represented Nutrien in various matters over the last several years." *Id*. at 4. Based on the evidence submitted regarding factors four, ten, and eleven, no departure from the lodestar amount is warranted.

As for the twelfth factor, the Court concludes the lodestar amount is comparable to awards in similar cases because the Mississippi Supreme Court has "traditionally approved as reasonable awards of attorneys' fees in collection matters in the amount of one-third of the indebtedness." *Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977, 986 (Miss. 1992) (one-third fee for indebtedness presumptively reasonable but still subject to evaluation under "common factors for determining reasonableness of attorney's fee award."). The attorneys' fees that Nutrien request are less than one-third of the amount owed.

### c. *Expenses*

Nutrien seeks "$2,422.82 in expenses incurred through August 14, 2025." Doc. #11 at 1. Reeves' affidavit supports this amount, which she attests "include[] but [are] not limited to filing fees, Pacer charges, copies, courier charges, and service of process fees." *Id.* at 3. Under the circumstances here, the Court finds such expenses reasonable.

### III
### Conclusion

Nutrien's motion for default judgment [11] is **GRANTED**. A judgment will be entered against McCroy in Nutrien's favor in the total amount of $148,509.77 ($118,843.95 as outstanding balance; $27,243.00 as attorneys' fees; and $2,422.82 as expenses).

**SO ORDERED**, this 17th day of February, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

11